IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WELDON H. ANGELOS,<br><br>Petitioner,<br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION**<br>**AND ORDER**<br>DENYING § 2255 MOTION IN PART<br>AND SETTING EVIDENTIARY HEARING<br>CONCERNING CLAIM OF<br>INEFFECTIVE ASSISTANCE<br>OF COUNSEL<br><br>Civil Case No. 2:07-CV-936-TC<br>Criminal Case No. 2:02-CR-708-PGC |

This matter comes before the court on federal prisoner Weldon H. Angelos's timely Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Mr. Angelos is represented by legal counsel and is not proceeding *pro se*.

In 2003, a jury convicted Mr. Angelos (a first-time offender) of multiple counts of criminal activity, including three counts of marijuana distribution, three counts under 18 U.S.C. § 924(c) of possession of a firearm in furtherance of drug trafficking, possession of a stolen firearm, and money laundering. Having exhausted his remedies on appeal, he now challenges his sentence of fifty-five years and one day (which includes three consecutive minimum mandatory sentences based on the "stacked" 924(c) counts).

Citing to the Fifth, Sixth, Eighth, and Fourteenth Amendments, he asserts that his sentence was cruel and unusual, and that he was a victim of prosecutorial vindictiveness in

charging and plea bargaining, prosecutorial misconduct at trial, and ineffective assistance of counsel before and at trial.  (Mr. Angelos has requested discovery and an evidentiary hearing to address some of the facts related to these claims.)  Further, he contends that the mandatory minimum sentence violated his Second Amendment right to keep and bear arms, and that the prosecutor's charging decisions violated the constitutional separation of powers doctrine.

At this point, having reviewed Mr. Angelos's motion, other relevant pleadings, the record of earlier proceedings, and controlling law, the court DENIES ALL of Mr. Angelos's § 2255 claims EXCEPT his claim that he received INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS, which claim the court TAKES UNDER ADVISEMENT pending an evidentiary hearing.[1]

The court's dismissal is warranted for two reasons.  First, all but his Sixth Amendment claims are barred because they were or should have been raised during his direct appeal to the Tenth Circuit Court of Appeals (and he does not satisfy any exception to the procedural default rules).  Second, at this point all but one[2] of his ineffective assistance claims fail on the merits because he has not demonstrated deficient performance or prejudice.  The reasons for the court's order are more fully developed below.

---

[1]Because Mr. Angelos has not established the need for discovery and an evidentiary hearing concerning prosecutors' motivations and actions during plea bargaining and at trial, his request is denied.  But the court finds that a hearing concerning Mr. Angelos's claim of ineffective assistance of counsel during the pre-trial stage is warranted to fully develop the record.

[2]The court defers ruling on the only remaining Sixth Amendment claim (ineffective assistance of counsel during plea negotiations) until after the record is fully developed concerning discussions between Mr. Angelos and his attorney about the government's plea offer.

## I.  PROCEDURAL BACKGROUND AND FINDINGS OF FACT

A.    Pre-Trial Events

      1.    Indictment, Arrest, and Searches

On November 13, 2002, a federal grand jury returned a six-count indictment against Mr.
Angelos.  He was charged with three counts of distributing marijuana, one count of knowingly
possessing a firearm in furtherance of one marijuana distribution event (a charge under 18 U.S.C.
§ 924(c) mandating a five-year minimum sentence), and knowingly receiving and possessing a
stolen firearm (one count) with a removed serial number (a separate count).

The first four counts of the indictment were based on evidence gathered by the
government through three controlled marijuana purchases ("buys") from Mr. Angelos on or about
May 21, 2002, June 6, 2002, and June 18, 2002, by the government's informant and buyer,
Ronnie Lazalde.  On each occasion, at the direction of Sergeant Jason Mazuran, Mr. Lazalde paid
Mr. Angelos $350 in exchange for eight ounces of marijuana.  The fifth and sixth counts in the
indictment, which alleged possession of a stolen firearm and possession of a firearm with an
obliterated serial number, were based on officers' seizure of a gun concealed in an ankle holster
on Mr. Angelos[3] after they arrested him on July 11, 2002, following an unrelated incident at an
apartment complex.

According to the trial testimony of Mr. Lazalde and Sergeant Mazuran, Mr. Lazalde
reported to Sergeant Mazuran immediately after each controlled buy that he had seen a gun in
Mr. Angelos's possession during the transaction.  For example, Mr. Lazalde testified that he told

---

      [3]At that time, Mr. Angelos did not have a permit to carry a concealed weapon.

Sergeant Mazuran right after the May 21, 2002 transaction that he had seen a 10 millimeter Glock pistol on the center console of Mr. Angelos's BMW, where the first buy took place. The presence of the pistol formed the basis for the 924(c) count in the original indictment. Mr. Lazalde also reported that during the second and third buy, Mr. Angelos has shown him the same Glock pistol in a holster secured to Mr. Angelos's ankle. But that information did not appear in the police report describing the transactions until October 30, 2002, when Sergeant Mazuran modified the report to add the information about the firearm.

On November 15, 2002, two days after the original indictment was issued, officers arrested Mr. Angelos and conducted a consensual search of Mr. Angelos's apartment. During the search agents found, among other things, three pounds of marijuana, three firearms, a large amount of cash, and two opiate suckers.

On December 16, 2002, Chelsea Davenport, Angelos's former girlfriend, told the government that Mr. Angelos was hiding drugs, firearms and money at the house where she lived (the Fort Union house) and in the trunk of Mr. Angelos's BMW parked in the house's garage. That day, law enforcement officers obtained and executed a search warrant at the house. During the search, officers found additional evidence of federal crimes, including marijuana, a large amount of cash, and firearms.

The next day, on December 17, 2002, Mr. Angelos and his attorney met with federal investigators to determine whether Mr. Angelos would cooperate with law enforcement. No agreement was reached.

Then, based on evidence obtained post-indictment, the government told Mr. Angelos, through his defense attorney, that it intended to supersede the original indictment to charge Mr.

4

Angelos with four additional counts of possession of a firearm in furtherance of drug trafficking in violation of § 924(c). If Mr. Angelos were convicted of five counts under § 924(c), he would have faced a minimum mandatory sentence of 105 years just for those crimes (a five-year sentence for the first count and a twenty-five-year sentence for each subsequent count). But the government agreed to provide a specific plea offer before seeking the superseding indictment from the Grand Jury.

2.      Plea Negotiations and Superseding Indictments

On January 20, 2003, the government extended a written plea offer to Mr. Angelos. Specifically, the government offered to recommend sixteen years of imprisonment if Mr. Angelos pleaded guilty to the first two counts in the original indictment (that is, the May 2002 distribution of marijuana and the § 924(c) count of possession of a firearm in furtherance of the May 2002 drug trafficking incident) and stipulated to the sixteen-year sentence. Also, according to the offer, the government would agree not to seek a superseding indictment containing the four § 924(c) counts and it would dismiss the remaining counts of the original indictment.

The offer of sixteen years exceeded the amount of time Mr. Angelos likely would have received if he were convicted only of the first two counts in the original indictment. In other words, the government requested that Mr. Angelos stipulate to an upward departure and plead guilty to two counts in exchange for a guarantee that he would not face counts that, upon conviction, would result in a minimum sentence of 105 years. The written offer clearly noted that rejection of the offer would expose Mr. Angelos to the risk of receiving what would amount to a life sentence.

The offer was available for acceptance up to February 21, 2003. Four days before the

5

offer expired, Mr. Angelos's attorney requested a two-week extension of time to discuss the matter with his client.  The record is not clear whether the extension was granted or what was discussed between Mr. Angelos and his attorney.  But in the end, no resolution was reached.

On June 18, 2003, the Grand Jury issued a superseding indictment against Mr. Angelos. It charged Mr. Angelos with seventeen counts, including the original three counts of marijuana distribution, five counts under 924(c)(1) (four more than the original indictment), three counts of possession of marijuana with intent to distribute, and other firearm-related charges.

Nine of the eleven new counts were based exclusively on evidence obtained after the original indictment was issued.  But two of the eleven new counts were based on events that occurred before the original indictment was issued on November 13, 2002.  Count IV of the superseding indictment alleged a June 6, 2002[4] violation of § 924(c)(1), occurring during the second controlled buy.  According to the government, Mr. Lazalde, the informant who provided the evidence that Mr. Angelos was in possession of a Glock pistol during the second buy, was unavailable at the time they were bringing the original indictment before the Grand Jury and so the validity of the evidence could not be confirmed.  Accordingly, they did not charge Mr. Angelos with that count in November 2002.  (See Ex. 10 attached to Response of U.S. to § 2255 Mot. at 4 n.1 (explaining the absence of the 924(c)(1) count for the second controlled buy).) Count VIII of the superseding indictment charged Mr. Angelos with being an unlawful user in possession of a firearm on July 11, 2002.[5]

_____

[4]The indictment alleged "on or about June 6, 2002" but apparently the actual date was June 4, 2002.

[5]The record does not reveal the reason why the government did not charge Mr. Angelos with the unlawful user crime in the original indictment, but the court does not find this missing

On August 4, 2003, Mr. Angelos filed a motion to suppress evidence obtained during the November and December 2002 searches.  While that motion was pending, the government, based on further investigation, obtained a second superseding indictment from the Grand Jury on October 1, 2003.  The second superseding indictment containing twenty counts:  the seventeen counts from the previous indictment plus three new counts alleging money laundering.

On November 4, 2003, the trial court denied Mr. Angelos's motion to suppress.  Trial was scheduled to begin in four weeks and the court's November 10, 2003 plea deadline was approaching.

At that point, Mr. Angelos attempted to re-open plea negotiations by offering to plead to three counts, described in his attorney's letter to the government as "one distribution count, one firearm count and one money laundering count."  (Nov. 7, 2003 Letter from Jerome Mooney, Esq. to AUSA Robert Lund, attached to Decl. of Jerome Mooney (Ex. 11 to U.S.'s Response to § 2255 Mot.).)  Mr. Angelos contends that the "firearm count" meant a § 924(c) count, but the government points out that there were numerous "firearm counts" in the second superseding indictment, and so the offer's generic language does not necessarily support the contention that Mr. Angelos expressly indicated his willingness to plead to one § 924(c) count.

On November 13, 2003, the government rejected the November 7, 2003 offer, stating that although the government considered the offer, it ultimately concluded that the offer was "untimely and insubstantial."  (Nov. 13, 2003 Letter from AUSA Robert Lund to Jerome Mooney, Esq., attached to Decl. of Jerome Mooney (Ex. 11 to U.S.'s Response to § 2255 Mot.).)

---

fact to be material in light of all the circumstances.

**B.**     **The Jury Trial and Defendant's Motion for Judgment of Acquittal**

Mr. Angelos's jury trial began on December 8, 2003.  The relevant details concerning

events at trial will be discussed below in the court's analysis.

After the government presented its case-in-chief, Mr. Angelos's attorney moved for a

judgment of acquittal as to Counts VII, XI, XIV, XV, XVI, XVII, and XX.  (Tr. of Dec. 15, 2003

Trial Proceedings at 1196-1201.)  The trial court granted the motion as to Count XVII (unlawful

user in possession of a firearm on December 16, 2002) but denied the motion as to the other

counts.  (Id. at 1201-02; Tr. of Dec. 16, 2003 Trial Proceedings at 1244.)

Mr. Angelos's case was submitted to the jury on the remaining nineteen counts.  The jury

convicted him of sixteen counts but acquitted him of two 924(c)(1) counts (Counts XIV and

XVI) and one count of possession of marijuana with intent to distribute (Count XV).

**C.**     **Sentencing**

The pre-sentence report indicated that Mr. Angelos effectively had no prior criminal

history and, based on the United States Sentencing Guidelines and statutory minimum mandatory

sentence requirements, recommended a sentence of 61.5 years (with no possibility of parole).

Before sentencing, the trial court expressed concern about what it characterized as, "at first blush,

. . . an extraordinarily long prison term for Mr. Angelos."  (Feb. 17, 2004 Order (Docket No. #

130) at 2.)

The court directed the parties to brief issues relating to the application and

constitutionality of mandatory minimum sentences in Mr. Angelos's case.  The parties filed

briefs.  In addition, a group of twenty-nine former U.S. District Court judges, U.S. Circuit Court

judges, and United States' Attorneys filed an amicus brief on behalf of Mr. Angelos, urging the

court to find the mandatory minimum sentence to be imposed on Mr. Angelos cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

Subsequently, the trial court invited Mr. Angelos "to file a pleading recounting the relevant plea negotiation history." (See Aug. 17, 2004 Order (Docket No. 152) at 1.) Mr. Angelos's counsel, Jerome Mooney, filed a Declaration and the United States filed a response. (See Docket Nos. 156, 157.) On September 14, 2004, the court held a meeting in chambers regarding the pre-sentence report. (Mr. Angelos was not present during the meeting in chambers.) The court then proceeded with the sentencing hearing in open court (Mr. Angelos was present there) and took the objections, arguments, and sentencing proposals under advisement. (See Sept. 14, 2004 Minute Entry, Docket # 158.) During the sentencing hearing, the court did not discuss any of the plea bargain history submitted by the parties. Sentencing was re-scheduled for November 16, 2004.

On November 16, 2004, during the sentencing hearing, the district court denied Mr. Angelos's Cruel and Unusual Punishment and Equal Protection challenges to the proposed sentence and imposed a term of imprisonment of fifty-five years and one day. A written order explaining the court's decision followed. See United States v. Angelos, 345 F. Supp. 2d 1227 (D. Utah 2004).

**D.    Mr. Angelos's Direct Appeals**

Mr. Angelos appealed his convictions and sentence to the Tenth Circuit Court of Appeals. He challenged the trial court's denial of his motion to suppress, its refusal to admit police reports as evidence at trial, and its interpretation of § 924(c) to mean that each of the three § 924(c) convictions required application of three consecutive sentences. He also challenged his sentence

9

on constitutional grounds, contending that it violated the Eighth Amendment's prohibition on

cruel and unusual punishment and his constitutional right to equal protection.

On January 9, 2006, the Tenth Circuit affirmed the lower court.  See <u>United States v.</u>

<u>Angelos</u>, 433 F.3d 738 (10th Cir. 2006).  Mr. Angelos's petition for a re-hearing *en banc* was

denied on April 4, 2006.  Mr. Angelos's petition for writ of certiorari to the United States

Supreme Court was denied on December 4, 2006.  <u>Angelos v. United States</u>, 127 S. Ct. 723 (Dec.

4, 2006) (mem.).

**E.    Mr. Angelos's § 2255 Motion**

1.    <u>Procedural Validity of Motion</u>

Mr. Angelos filed his § 2255 Motion on December 3, 2007.  Although Mr. Angelos filed

the declaration of his attorney Douglas A. Berman in support of his Motion (<u>see</u> Docket Entry

No. 25), he has not filed a declaration or affidavit of his own, and he did not sign the § 2255

Motion under penalty of perjury.  But Mr. Berman and Mr. Angelos's other attorneys signed the

motion on Mr. Angelos's behalf.  In addition, Mr. Berman declares under penalty of perjury that

Mr. Angelos gave him permission to file the § 2255 Motion and that the statements in the

declaration are "true and correct":

> <u>[T]he facts alleged in these filings are true to the best of my knowledge based</u>
> <u>upon</u> my reading of what I know to be true copies of documents in this action and
> <u>my conversations with Weldon Angelos.  I was authorized by Weldon Angelos to</u>
> <u>file [the § 2255 Motion] on his behalf.</u>  I make this verification because Mr.
> Angelos is incarcerated in California, and because <u>the truth and accuracy of the</u>
> <u>facts contained herein are as much within my knowledge as that of Mr. Angelos</u>
> and because <u>Mr. Angelos reviewed these filings in draft form and confirmed the</u>
> <u>accuracy</u> of all the fact[s] alleged in these filings.

(Decl. of Douglas A. Berman ¶¶ 2-3 (emphasis added).)

The rule governing the filing of a § 2255 motion requires that the motion "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant."  Rule 2(b)(5) of Rules Governing Section 2255 Proceedings.  Despite the government's assertion otherwise, the court finds that Mr. Angelos satisfied this requirement.[6]

But the court does not accept Mr. Berman's declaration as a sworn statement of facts from Mr. Angelos, who has not signed anything under oath.  With all due respect to Mr. Berman, his "knowledge" of facts not revealed by the record is based on unsworn statements from Mr. Angelos.  What Mr. Angelos may have said to Mr. Berman does not constitute evidence of the truth and accuracy of events that are not reflected on the record before the court (for example, Mr. Angelos's allegation that his trial counsel did not advise him of the sentencing risks he faced if he did not accept the government's plea offer).  The lack of any sworn statement from Mr. Angelos is a significant gap in the record[7] that Mr. Angelos and his attorneys easily could have avoided before they filed the § 2255 Motion, given that the evidence is readily available to Mr. Angelos (who should have personal knowledge of what he would have done had he developed a "better understanding" of the risks, and knowledge of what was said and what transpired between him and his trial counsel).

---

[6]The government contends that Mr. Angelos's motion should be dismissed, *inter alia*, because he did not satisfy the requirement of Rule 2(b)(5).  Initially, Mr. Angelos did not meet the requirement.  That is, Mr. Berman did not file his declaration until ten months after Mr. Angelos filed his § 2255 Motion.  Still, rather than dismiss on a technicality, the court accepts Mr. Angelos's late submission as a cure to his motion's incompleteness under Rule 2(b).

[7]In part, the gap is significant because case law establishes a strong presumption that counsel provided effective assistance, and Mr. Angelos bears the burden of proof to overcome that strong presumption.  James v. Gibson, 211 F.3d 543, 555 (10th Cir. 2000).

2.      The Government's Response

After Mr. Angelos filed his Motion, and as ordered by the court, the United States

Attorney's Office filed a response.[8]  Among other things, the government's response highlights

the lack of evidence in Mr. Angelos's Motion.  The United States also responded to the amicus

brief filed by the Center for the Administration of Criminal Law in support of Mr. Angelos's

Motion.

3.      Mr. Angelos's Grounds For Relief

In his Motion, Mr. Angelos raises the following grounds for relief: (1) he received

ineffective assistance of counsel during plea bargaining, pre-trial preparation, and trial, in

violation of his Sixth Amendment rights; (2) prosecutorial vindictiveness and prosecutorial

misconduct during trial violated his Fifth Amendment right to due process; and (3) his sentence

violates the Eighth Amendment prohibition of cruel and unusual punishment, his right to equal

protection, his Second Amendment rights, and the separation of powers doctrine.[9]  The particular

aspects of each ground for relief are described below.

---

[8]One week before the United States filed its response, Mr. Angelos filed a Motion for
Partial Summary Judgment to Vacate Portion of Sentence Pursuant to 28 U.S.C. § 2255 (Docket
No. 9).  The United States has moved to strike the motion as procedurally improper and
duplicative of Mr. Angelos's § 2255 Motion.  (See Mot. to Strike Angelos's Mot. for Partial
Summ. J. (Docket No. 22).)  The court will address these motions below.

[9]In a separate pleading (Mr. Angelos's Motion for Partial Summary Judgment, which the
United States has moved to strike), Mr. Angelos cites to two recent United States Supreme Court
decisions to support his claims.  One decision addresses the Eighth Amendment's ban on cruel
and unusual punishment, and the other decision addresses the Second Amendment right to bear
arms in one's home.  It is not clear whether Mr. Angelos cites to these decisions as intervening
changes of law, which is another basis for seeking relief under § 2255, or cites to them as
supplemental authority.  In either event, the court will discuss the cases below.

### a. Mr. Angelos's Claim of Ineffective Assistance of Counsel

Mr. Angelos contends that his trial attorney prejudiced him by failing to do the following: adequately advise him or effectively negotiate during the plea bargaining stage (both before and after the first superseding indictment was issued); investigate exculpatory evidence and prepare an effective defense to the § 924(c) counts; present exculpatory witnesses and evidence at trial; effectively cross-examine two key prosecution witnesses; and move for a judgment of acquittal or new trial on at least one of the § 924(c) counts and otherwise preserve critical issues for appeal.  Mr. Angelos also contends that the cumulative effect of the errors prejudiced him.

### b. Mr. Angelos's Claim of a Fifth Amendment Denial of Due Process Based on Prosecutorial Vindictiveness and Prosecutorial Misconduct During Trial

Mr. Angelos contends that the government (1) sought and obtained the first superseding indictment to punish Mr. Angelos for exercising his constitutional right to go to trial;[10] and (2) brought a "trumped up" § 924(c) charge in the superseding indictment by urging prosecution witness Ronnie Lazalde to "remember" seeing a gun during the June 4, 2002 controlled buy.[11] (§ 2255 Mot. at 28.)

---

[10]Mr. Angelos also asserts that the government's "aggressive and oppressive approach to plea bargaining following the original indictment was motivated, at least in part, to punish Angelos for his interest in exercising his constitutionally protected right not to cooperate with authorities."  (§ 2255 Mot. at 28.)  Mr. Angelos does not cite to any law suggesting that there is a separate and distinct constitutional right as he has articulated it, and the court is not aware of any such authority.  To the extent his right not to cooperate with authorities falls within his constitutional right to a jury trial, the court is addressing the issue.  To the extent the right falls within his Fifth Amendment privilege against self-incrimination, he has not raised that as an issue and the court will not consider it.

[11]Mr. Angelos requests discovery and evidentiary hearing to address these issues.

c.      **Mr. Angelos's Claim that Fifty-Five Year Sentence is Unconstitutional**

Mr. Angelos contends that (1) "imposition of the excessive sentence itself violates the Eighth Amendment as 'grossly disproportionate' to the offenses of conviction in light of society's evolving standards of decency"[12] and so it constitutes cruel and unusual punishment; (2) imposition of the sentence violates his equal protection rights under the Fifth and Fourteenth Amendments because (a) his sentence is irrational in comparison to other sentences of those committing comparable offenses and those guilty of "far more heinous acts";[13] and (b) the prosecution's charging and bargaining was based on constitutionally impermissible reasons and motives;  (3) his sentence under § 924(c) violates his Second Amendment right to keep and bear arms; and (4) the constitutional separation of powers doctrine was violated because the prosecutors (the executive branch) essentially controlled the sentencing, not the trial court.

4.      Mr. Angelos's Request for Discovery and Evidentiary Hearing

In addition to substantive relief, Mr. Angelos requests discovery and an evidentiary hearing to explore two allegations.  First, he contends that circumstantial evidence suggests that the prosecutors' motivation in carrying out their threat to charge Mr. Angelos with additional § 924(c) counts was unconstitutional (i.e., was done solely to punish Mr. Angelos for exercising his right to a jury trial).  Second, he suggests that the prosecutors suborned perjury from Ronnie Lazalde, and by implication, Sergeant Mazuran, who testified that Mr. Lazalde told him about Mr. Angelos's gun immediately after the controlled buys occurred, even though Sergeant Mazuran did not put that information in the police report until October 30, 2002.

---

[12](§ 2255 Mot. at 30.)

[13](Id.)

14

## II.  CONCLUSIONS OF LAW

**A.**     **§ 2255 Standards and Rules**

After a prisoner has exhausted all of his remedies on direct appeal, as Mr. Angelos has

done, he can file a motion collaterally attacking his sentence if certain circumstances are met.

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that [1] the sentence was
> imposed in violation of the Constitution or laws of the United States, or [2] that
> the court was without jurisdiction to impose such sentence, or [3] that the
> sentence was in excess of the maximum authorized by law, or [4] is otherwise
> subject to collateral attack, may move the court which imposed the sentence to
> vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (emphasis added).  Mr. Angelos relies upon the first and fourth grounds listed

above.

Upon receiving the § 2255 motion, the court must follow the directions set forth in the

same provision:

> Unless the motion and the files and records of the case conclusively show that the
> prisoner is entitled to no relief, the court shall cause notice thereof to be served
> upon the United States attorney, grant a prompt hearing thereon, determine the
> issues and make findings of fact and conclusions of law with respect thereto.

Id.

**B.**     **All But Mr. Angelos's Claims for Ineffective Assistance of Counsel Are Procedurally
Barred.**

Issues and claims that were raised on direct appeal, and then considered and resolved by

the appellate court, may not be raised in a § 2255 motion.  United States v. Warner, 23 F.3d 287,

291 (10th Cir. 1994).  Similarly, issues and claims that should have been raised on direct appeal

are likewise barred from consideration under § 2255.[14]  Id. ("Section 2255 motions are not

available to test the legality of matters which should have been raised on direct appeal."); United

States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993).

In his appeal to the Tenth Circuit, Mr. Angelos raised his Eighth Amendment "cruel and

unusual punishment" claim and his equal protection claim.  Both were considered and rejected by

the appellate court.  See United States v. Angelos, 433 F.3d 738 (10th Cir. 2006).  Accordingly,

those claims are barred and the court will not consider them.

Mr. Angelos also had a fair opportunity during his direct appeal to raise and litigate his

claims of vindictive prosecution and prosecutorial misconduct during trial,[15] violation of his

Second Amendment rights, and violation of the separation of powers doctrine.  All the necessary

factual and legal arguments were available to him at trial and on direct appeal.  Accordingly,

those claims are procedurally defaulted.  See Hines v. United States, 971 F.2d 506, 507 (10th Cir.

1992) (discussing "Frady defense" set forth in United States v. Frady, 456 U.S. 152 (1982), in

which U.S. Supreme Court barred claim in § 2255 motion because movant had failed to raise it

during trial or on direct appeal).

---

[14]But "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not
bar the claim from being brought in a later, appropriate proceeding under § 2255."  Massaro v.
United States, 538 U.S. 500, 509 (2003).  See also United States v. Carter, 130 F.3d 1432, 1441-
42 (10th Cir. 1997) ("The general rule in this circuit is that ineffective assistance of counsel
claims should be brought in collateral proceedings rather than on direct appeal.").

[15]Vindictive prosecution and prosecutorial misconduct claims may be raised on direct
appeal.  See, e.g., United States v. Raymer, 941 F.2d 1031 (10th Cir. 1991) (entertaining claim of
vindictive prosecution on appeal).  Even if Mr. Angelos could demonstrate that the claim was not
preserved for appeal and so he could not have raised it before the Tenth Circuit, the court
alternatively finds, as discussed below, that he is not entitled to relief based on his vindictive
prosecution and prosecutorial misconduct claims.

Furthermore, Mr. Angelos does not fall within the exceptions to the procedural default rule.  In Frady, the U.S. Supreme Court held that "to obtain collateral relief [under § 2255] based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Frady, 456 U.S. at 167-68, quoted in Hines, 971 F.2d at 507.  In his § 2255 Motion, Mr. Angelos has not shown cause excusing the procedural default of his claims.  In fact, he provides no explanation whatsoever.[16]

Another exception allows review of an otherwise procedurally defaulted claim if the movant demonstrates that there has been an intervening change in the law of the circuit that applies retroactively to his situation.  United States v. Price, 400 F.3d 844, 845 (10th Cir. 2005); United States v. Prichard, 875 F.2d 789, 791 (10th Cir. 1989);  United States v. Nolan, 571 F.2d 528, 530 (10th Cir. 1978).   Mr. Angelos cites to two recent Supreme Court decisions to support

---

[16]The other exception to the procedural default rule—a showing that a fundamental miscarriage of justice will occur if the claim is not addressed—is not applicable here.  The "fundamental miscarriage of justice" doctrine requires the defendant to claim and produce new and reliable evidence that he is actually innocent.  Bousley v. United States, 523 U.S. 614, 622 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."); Schlup v. Delo, 513 U.S. 298, 324 (1995) ("To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial.");  Murray v. Carrier, 477 U.S. 478, 496 (1986); United States v. Cervini, 379 F.3d 987, 991-92 (10th Cir. 2004).  Mr. Angelos does neither.

his Eighth Amendment claim[17] and his Second Amendment claim[18], but it is not clear that he

contends these decisions are intervening changes in the law.  If he does, the court disagrees.[19]  If

he is simply providing supplemental authority to reinforce his arguments, then his citation to the

cases does not cure his procedural default on those two claims.  Either way, the court will not

consider his claims under the Eighth and Second Amendments.

**C.**     **Even if Not Procedurally Barred, Mr. Angelos's Claims Under the Second Amendment, Fifth Amendment, and Separation of Powers Doctrine Fail on the Merits.**

   1.     Second Amendment Claim

The nature of this claim is not clear.  Mr. Angelos says he does not assert "that the

Second Amendment precludes any criminal punishment for his keeping of arms in his home;

rather, he is simply arguing that the 25-year term of imprisonment as applied to this case for

having firearms in his home <u>raises serious concerns</u> under any individual rights interpretation of

the Second Amendment's right to 'keep and bear arms.'" (§ 2255 Mot. at 48 (emphasis added).)

---

[17]He cites to the recent decision in <u>Kennedy v. Louisiana</u>, 128 S. Ct. 2641 (June 25, 2008), which, he says, re-emphasizes Eighth Amendment jurisprudence requiring analysis of a claim of cruel and unusual punishment based on "evolving standards of decency that mark the progress of a maturing society."  <u>Id.</u> at 2649.

[18]He cites to the recent decision in <u>District of Columbia v. Heller</u>, 128 S. Ct. 2783 (June 26, 2008), to support his contention that his firearm-related convictions and sentence unconstitutional under the Second Amendment's right-to-bear-arms provision.

[19]<u>Kennedy v. Louisiana</u>, 128 S. Ct. 2641 (June 25, 2008), dealt with the issue of whether the Eighth Amendment prohibits the death penalty for the rape of a child where the crime did not result and was not intended to result in death of the child.  It does not discuss mandatory minimum sentences or gun crimes.  <u>District of Columbia v. Heller</u>, 128 S. Ct. 2783 (June 26, 2008), did not change the notion that the right to bear arms has boundaries.  The decision does not deal with statutes prohibiting possession or use of firearms in connection with criminal behavior.

Given Mr. Angelos's failure to develop the argument beyond "serious concerns" or cite to case law or the record to support his vague assertions, the court is not convinced that rights under the Second Amendment are even implicated by the matter, much less that any violation of Second Amendment rights has occurred.  Accordingly, Mr. Angelos's Second Amendment claim is not a proper ground for relief.

       2.      <u>Claim of Vindictive Prosecution and Prosecutorial Misconduct in Violation of Due Process Rights Under Fifth Amendment</u>

Mr. Angelos contends that his due process rights were violated by prosecutorial vindictiveness through acts of charging and plea bargaining before trial, and by prosecutorial misconduct at trial by suborning perjury of witness Ronnie Lazalde (who testified that he saw a gun in Mr. Angelos's possession during the second controlled buy), and, by implication, a testifying police officer (Sergeant Mazuran) whose initial report of the controlled buys did not contain any mention of a firearm and who later modified the report based on representations from Mr. Lazalde, the informant.

Mr. Angelos admits that his claims of prosecutorial vindictiveness and prosecutorial misconduct are not well developed and are brought based on circumstantial evidence in the record and inferences ("suspicions") arising out of that evidence.  He seeks discovery and an evidentiary hearing to develop his claims.  For instance, he states that:

> The circumstantial evidence of prosecutorial vindictiveness present in this case also raises the <u>disconcerting possibility</u> that, after Angelos refused to plead guilty to the original indictment, prosecutors urged informant Lazalde to "remember" having seen Angelos flash a gun during their June 4 encounter.  Though, at this stage of these proceedings, <u>Angelos cannot present direct evidence</u> relating to his concern that prosecutors "trumped up" an additional 924(c) count, <u>Angelos seeks to conduct discovery</u> to explore why and how prosecutors pursued this charge only in its superseding indictment and did so despite knowing the weakness of the

evidence and the suspect nature of the testimony of informant Lazalde presented at trial.  Angelos is adverse to casting inappropriate allegations concerning the conduct and motives of federal prosecutors; but <u>the extreme and unprecedented treatment he has received at the hands of government officials makes it difficult for him not to be suspicious</u> that prosecutors were driven by motives other than the pursuit of justice.

(§ 2255 Mot. at 28-29 (emphasis added).)

> **a.      Mr. Angelos is not Entitled to Discovery or an Evidentiary Hearing Concerning his Claims of Vindictive Prosecution and Prosecutorial Misconduct.**

The procedural rules governing § 2255 motions provide that discovery and an evidentiary hearing are not mandatory but may be granted if certain standards are met.  The court finds that Mr. Angelos has not met those standards and so he is not entitled to discovery or an evidentiary hearing concerning his claims of prosecutorial misconduct and prosecutorial vindictiveness.

Leave of court is required to conduct discovery.  "A judge may, for good cause, authorize a party to conduct discovery . . . ."  Rule 6(a) of Rules Governing § 2255 Proceedings.  According to the Tenth Circuit, "[g]ood cause is established 'where <u>specific allegations</u> before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  <u>Wallace v. Ward</u>, 191 F.3d 1235, 1245 (10th Cir. 1999) (quoting <u>Bracy v. Gramley</u>, 520 U.S. 899, 908-09 (1997)).   The rules also require that Mr. Angelos "must provide reasons for the request.  The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6(b).

Although Mr. Angelos has articulated a general reason why he requests discovery, he has failed to provide any proposed discovery to the court, in violation of Rule 6(b)'s requirements.

More significantly, Mr. Angelos has not shown good cause for discovery.

Conclusory allegations will not suffice to establish good cause.  Id.  See also United States v. Hirsch, 360 F.3d 860, 864 ("In order to obtain discovery, [defendant] had to produce at least some credible showing" supporting his allegations of vindictive prosecution).  Mr. Angelos does not provide any direct evidence to support his conclusions (he contends he cannot obtain it except through discovery) and so he relies on the circumstantial evidence to justify his request for discovery.

Such circumstantial evidence includes the length of Mr. Angelos's sentence, the length of the potential sentence he would have received if convicted of all counts, the inconsistency in the police reports concerning Mr. Lazalde's observation of a gun during the controlled buys, the timing of the superseding indictment, the prosecutor's charging and bargaining decisions, Mr. Angelos's first-offender status, and the government's refusal to re-open plea discussions.  (See § 2255 Mot. at 27-29.)  He also points to a local newspaper article in which then-U.S. Attorney Paul Warner was quoted as saying that "he personally has little sympathy for Angelos, since his office offered Angelos a plea bargain of just over 15 years, which he rejected [in favor of] taking the case to trial."  (Id. at 27 n.7 (quoting Jan. 2006 newspaper article).)  And Mr. Angelos supports his request by bootstrapping "[t]he circumstantial evidence of prosecutorial vindictiveness present in this case," which he contends "also raises the disconcerting possibility that, after Angelos refused to plead guilty to the original indictment, prosecutors urged informant Lazalde to 'remember' having seen Angelos flash a gun during their June 4 encounter."  (Id. at 28 (emphasis added).)

As will be discussed in detail below, the evidence listed above and Mr. Angelos's

21

allegations do not give the court reason to believe that Mr. Angelos will be able to establish his claim of prosecutorial vindictiveness and prosecutorial misconduct.

The court also holds that Mr. Angelos is not entitled to an evidentiary hearing on the issues he identified in his Motion. After a § 2255 motion is filed, "the judge must review [the materials] to determine whether an evidentiary hearing is warranted." Rule 8(a); see also § 2255 (requiring court to hold hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"). But an evidentiary hearing is not allowed as a matter of course.

> To obtain the evidentiary hearing [the defendant] seeks, he must offer sufficient evidence to raise a reasonable doubt that the government acted properly in bringing [the charge]. To raise a reasonable doubt as to the propriety of charges added before trial, a defendant "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." The affirmative showing is necessary because a prosecutor's pretrial decisions, including the choice to seek increased or additional charges, are presumed valid.

United States v. Falcon, 347 F.3d 1000, 1004 (7th Cir. 2003) (internal citations omitted). See also Hatch v. State of Oklahoma, 58 F.3d 1447, 1471 (10th Cir. 1995) (to obtain evidentiary hearing, "allegations must be specific and particularized, not general or conclusory"); United States v. Cyprian, 23 F.3d 1189, 1196 (7th Cir. 1994) (evidentiary hearing not required unless defendant establishes that "prosecutor harbored genuine animus; and absent this motive, defendant would not have been prosecuted. In all, there must be sufficient evidence produced to raise a reasonable doubt that the government acted properly in seeking the indictment."); Andrews v. Shulsen, 802 F.2d 1256, 1266 (10th Cir. 1986) ("Conclusory allegations will not suffice to warrant a hearing."). Given the speculative nature of Mr. Angelos's allegations, the

court finds he has not satisfied his burden of demonstrating that he is entitled to an evidentiary

hearing.

    b.    **Mr. Angelos's Claims of Prosecutorial Misconduct and Vindictive Prosecution Fail as a Matter of Law.**

Because Mr. Angelos has not satisfied his initial burden concerning the allegations of

prosecutorial misconduct, that claim is dismissed.  His prosecutorial vindictiveness claim also

fails as a matter of law based on the nature of the claim (pre-trial charging and bargaining), the

record before the court, and legal standards governing prosecutorial vindictiveness claims in the

pre-trial setting.

A vindictiveness claim arises if the defendant is penalized for exercising a constitutional

right (such as the right to go to trial instead of pleading guilty) during the criminal proceeding.

United States v. Lampley, 127 F.3d 1231, 1245 (10th Cir. 2005).

> To punish a person because he has done what the law plainly allows him to do is a
> due process violation of the most basic sort, and for an agent of the State to pursue
> a course of action whose objective is to penalize a person's reliance on his legal
> rights is patently unconstitutional.

Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) (internal citations and quotation marks

omitted).[20]

Typically, to succeed on a claim of vindictive prosecution, the defendant bears the burden

of proof, and "must establish either (1) actual vindictiveness, or (2) a realistic likelihood of

vindictiveness which will give rise to a presumption of vindictiveness."  United States v.

--------

[20]A defendant's constitutional rights would be violated if the prosecutor made a decision
to charge based on an improper criterion, such as the defendant's race or religion.  United States
v. Sarracino, 340 F.3d 1148, 1178 (10th Cir. 2003).  Mr. Angelos makes no such claim here.

Raymer, 941 F.2d 1031, 1040 (10th Cir. 1991) (citing United States v. Goodwin, 457 U.S. 368, 347 (1982)).  In United States v. Sarracino, 340 F.3d 1148 (10th Cir. 2003), the Tenth Circuit defined the inquiry as "whether the prosecution engaged in conduct that would not have occurred but for the prosecution's desire to punish the defendant for exercising a specific legal right."  Id. at 1178 (emphasis added).  If the defendant meets its initial burden of proof, then the burden shifts to the government "to justify its decision with legitimate, articulable, objective reasons."  Raymer, 941 F.2d at 1040.  Otherwise, the court does not need to reach the question of whether the government has properly justified its decision.  Id.

But there is one significant wrinkle in the general principles stated above.  The law distinguishes between prosecutorial vindictiveness occurring before trial and after trial.  Specifically, the United States Supreme Court, in Bordenkircher v. Hayes, 434 U.S. 357 (1978), rejected any presumption of prosecutorial vindictiveness in the pre-trial setting of plea negotiations.  Under Bordenkircher, "the presumption is without application when a prosecutor offers a defendant a chance to plead guilty or face more serious charges, provided the prosecutor has probable cause on the more serious charges and the defendant is free to accept or reject the offer."  Raymer, 941 F.2d at 1040.

Mr. Angelos bases his vindictive prosecution claim on the prosecutor's pre-trial actions of charging and making a conditional offer for a plea bargain, then seeking a superseding indictment containing much more serious charges after Mr. Angelos rejected the plea offer, and then rejecting a later plea offer from Mr. Angelos.

As a matter of law, he is not entitled to rely on a presumption of vindictiveness.  See Lampley, 127 F.3d at 1245 (rejecting vindictive prosecution claim that government's additional

24

charge of 924(c) count in superseding indictment following failed plea negotiations was a violation of due process).

Furthermore, he has not presented specific allegations of actual vindictiveness, much less evidence of such.[21]  The record provides no evidence of improper conduct on the part of the prosecution in charging and negotiating with Mr. Angelos.  "A prosecutorial decision is not vindictive if it is based upon the normal factors ordinarily considered in determining what course to pursue."  Raymer, 941 F.2d at 1042.   See also, e.g., Weatherford v. Busey, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.");  Bordenkircher, 434 U.S. at 358-59, 364 (finding no vindictiveness in prosecutor's serious threat during plea negotiations that if defendant did not plead to lesser charges, the prosecutor would pursue a charge that upon conviction would result in life sentence under Kentucky's three-strikes act); United States v. Falcon, 347 F.3d 1000, 1005 (7th Cir. 2003) ("When the government brings additional charges before trial, but after the defendant exercises a procedural right, evidence of suspicious timing alone does not indicate prosecutorial animus."); Sarracino, 340 F.3d at 1177-78 ("Merely by the appearance of vindictive motives, vindictiveness may not be presumed."); United States v. Carter, 130 F.3d 1432, 1443-44 (10th Cir. 1997) (holding that government's refusal to renew plea offer was not evidence of vindictiveness); Lampley, 127 F.3d at 1245 (nothing in record of prosecutor's actions was untoward, even though government pursued 924(c) claim after plea negotiations failed).

---

[21]As noted above, Mr. Angelos is not entitled to discovery or an evidentiary hearing on this matter.  See also United States v. Falcon, 347 F.3d 1000, 1005 (7th Cir. 2003) (denying request for evidentiary hearing on vindictive prosecution claim when "sole support for his [claim] is the allegedly suspicious timing" of an allegedly retaliatory charge of illegal re-entry).

25

For the foregoing reasons, Mr. Angelos's claims of vindictive prosecution and prosecutorial misconduct at trial, even if not procedurally defaulted, fail as a matter of law.

        3.      Claim of Violation of Separation of Powers Doctrine

Mr. Angelos contends that the mandatory minimum sentence set forth in § 924(c) and the prosecutor's sole discretion to charge numerous violations of § 924(c) violated the constitutional separation of powers doctrine by taking away the court's authority to impose sentence on a convicted felon.  Assuming he has standing to make such an argument, his argument fails on the merits because he incorrectly interprets the law.

The Tenth Circuit has "generally recognized that mandatory sentences do not violate the separation of powers principle." United States v. Gurule, 461 F.3d 1238, 1246 (10th Cir. 2006). In Gurule, the Tenth Circuit rejected the argument that the federal three-strikes-law, which required imposition of a mandatory life sentence for a third crime, violated the separation of powers doctrine.  The court pointed out that "the Supreme Court has held that Congress has the power not only to define criminal offenses but to determine punishments, and in the exercise of that power Congress may choose to give the judicial branch no sentencing discretion whatsoever." Id. (citing Chapman v. United States, 500 U.S. 453, 467 (1991)).

In United States v. Curtis, 344 F.3d 1057 (10th Cir. 2003), a case addressing essentially the same claim raised by Mr. Angelos, the Tenth Circuit rejected a separation of powers challenge to a sentence imposed based on multiple convictions under § 924(c).  In Curtis, the Tenth Circuit said the argument was flawed because it equated the filing of federal charges with the conviction of the defendant based on those charges, and the court noted that all three branches of government were involved in the process. Id. at 1065.  Given the above precedent,

26

Mr. Angelos's separation of powers argument fails as a matter of law.

**D.      Mr. Angelos's Claim of Ineffective Assistance of Counsel During Trial Fails on the Merits**.

1.      Standards Governing Ineffective Assistance of Counsel Claims

"To establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was constitutionally deficient, and that this deficient performance prejudiced him." United States v. Harfst, 168 F.3d 398, 402 (10th Cir. 1999) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  "'An ineffective assistance claim may be resolved on either performance or prejudice grounds alone.'" United States v. Kennedy, 225 F.3d 1187, 1197 (10th Cir. 2000) (quoting Fox v. Ward, 200 F.3d 1286, 1295 (10th Cir. 2000)).

To satisfy the first prong of this test, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. For the second prong a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

A court's review of counsel's performance must be highly deferential.  "'There is a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption.'" Kennedy, 225 F.3d at 1197 (quoting United States v. Williams, 948 F. Supp. 956, 960 (D. Kan. 1996)).  It is well-established that actions or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel.  Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). To establish deficient performance, Mr. Angelos must show that his attorney's performance was

27

"completely unreasonable, not merely wrong."  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).

2.  Mr. Angelos's Claims of Ineffective Assistance of Counsel Related to Trial Proceedings

Mr. Angelos raises a series of alleged errors on the part of his trial counsel.[22] Specifically, he contends that his trial attorney "(A) failed to effectively impeach informant Lazalde and other suspect witnesses presented by the government; (B) failed to present key defense witnesses and other exculpatory evidence; and (C) failed to move for judgment of acquittal on one of the key 924(c) counts and otherwise preserve critical issues for appeal." (§ 2255 Mot. at 19.)  Mr. Angelos also contends that the cumulative effect of the errors prejudiced him.

a.  **Failure to Effectively Impeach Key Government Witnesses**

Mr. Angelos contends that he received ineffective assistance of counsel because his defense attorney did not "effectively impeach" government witnesses Ronnie Lazalde, Chelsea Davenport, and Sergeant Jason Mazuran.

(I)  *Ronnie Lazalde*

Mr. Angelos argues that Mr. Lazalde's testimony about the presence of a gun at the first two controlled buys was "suspect in many ways and should have been subject to devastating impeachment."  (Id.)  He points to inconsistencies in Mr. Lazalde's testimony concerning the

_____

[22]At this time the court does not address Mr. Angelos's claim that he received ineffective assistance of counsel during plea negotiations.  After the court holds an evidentiary hearing to develop the factual record, the court will issue its decision on that aspect of Mr. Angelos's ineffective assistance claim.

first controlled buy and to surveillance photos of the second controlled buy that purportedly show that it was physically impossible for Mr. Lazalde to see a firearm in an ankle holster on Mr. Angelos's leg because Mr. Angelos's car blocked Mr. Lazalde's line of sight.

Having reviewed the transcript of the cross-examination of Mr. Lazalde, during which defense counsel used one of the surveillance photos to question Mr. Lazalde about whether the gun was present during one of the controlled buys, the court concludes that the defense attorney's performance was not deficient.

### (ii) *Chelsea Davenport*

Mr. Angelos's estranged girlfriend Chelsea Davenport testified against him at trial.  He contends that Ms. Davenport's testimony was "subject to strong impeachment for bias and inconsistent statements" but that "counsel failed to rebut or question in any way" Ms. Davenport's testimony.  (§ 2255 Mot. at 20-21.)  The record does not support Mr. Angelos's assertion.  (See Tr. of Dec. 15, 2003 Trial Proceedings at 1032-1050; U.S.'s Response to § 2255 Mot. at 41-42 (summarizing impeachment testimony elicited by Mr. Angelos's defense counsel during his cross-examination of Ms. Davenport and other impeaching witnesses).)

Having reviewed the transcript of trial testimony and closing argument concerning Ms. Davenport, the court finds that defense counsel's performance was not deficient in this regard.

### (iii) *Sergeant Jason Mazuran*

Sergeant Mazuran testified that police reports describing the first two controlled buys did not contain any reference to a firearm until long after Mr. Angelos was arrested in July and found to have a firearm.  He also testified that he made additions to the police reports on October 30, 2002, to include Mr. Lazalde's earlier statement to Sergeant Mazuran that he had seen Mr.

29

Angelos with a gun during the three controlled buys.

Mr. Angelos's counsel cross-examined Sergeant Mazuran about the police reports, implying that the police reports were, at a minimum, not reliable. And he emphasized this point during closing argument. Defense counsel also questioned Sergeant Mazuran extensively about other problems with the evidence. (See Tr. of Dec. 9, 2003 Trial Proceedings at 161-227, 236-42, 243-52.)

Having reviewed the transcript of the cross-examination of Sergeant Mazuran, the court finds that Mr. Angelos's defense attorney's performance was not deficient.

### b.   Failure to Present Exculpatory Witnesses and Evidence at Trial

Mr. Angelos contends that, because the initial police reports failed to mention Mr. Lazalde's observation of a gun during of three controlled buys, competent counsel would have "invested significant pre-trial resources in investigating the circumstances surrounding the [three controlled buys] and surrounding informant Lazalde's belated and self-serving claims that he saw a gun during these transactions." (§ 2255 Mot. at 15.) (Mr. Angelos provides no evidence that Mr. Lazalde's claims were "self-serving.") Mr. Angelos questions the validity of Lazalde's testimony at trial, suggesting in particular that it was physically impossible for Mr. Lazalde to see a firearm in an ankle holster on Mr. Angelos's leg during the June 4 controlled buy because surveillance photos suggest that Mr. Angelos's car blocked Mr. Lazalde's line of sight. Accordingly, he contends that trial counsel should have obtained "potentially mitigating expert testimony" to address and "contradict informant Lazalde's testimony concerning what he saw [and that such expert testimony] would have also undermined dramatically informant Lazalde's overall veracity, which in turn could have greatly increased the likelihood of the jury finding

reasonable doubt on both of the 924(c) counts that hinged entirely on Lazalde's testimony."[23]

(Id. at 16.)

Mr. Angelos does not explain how the testimony of a "forensics expert" would have been necessary to "analyze the crime scene based on the government's surveillance photographs" (id. at 22) or how such an expert would have been be allowed to testify under the Federal Rules of Evidence. Indeed, the court does not understand what aspects of the photos and the "line of sight" argument would have been incomprehensible to the jurors. Expert testimony is not necessary when jurors are able to understand the evidence without specialized knowledge concerning the subject. See Fed. R. Evid. 702.

And, as noted above, Mr. Angelos's attorney did cross-examine Mr. Lazalde concerning his observation of a firearm during the first two controlled buys. Also, during closing argument, he attacked Mr. Lazalde's credibility and presented the defense theory that Mr. Lazalde could not have seen a weapon during the June 4 drug transaction. Specifically, in his closing argument, Mr. Angelos's attorney compared Mr. Lazalde's testimony to three surveillance photos documenting the June 4th transaction. After describing the physical locations of Mr. Lazalde, Mr. Angelos, and Mr. Angelos's car (i.e., describing Mr. Lazalde's line of sight), as shown by the photo, defense counsel said:

_____

[23]Mr. Angelos also contends that the alleged "investigatory failures likely impacted the posture of plea negotiations following the superseding indictments: armed with evidence raising serious doubts about key 924(c) counts, the government likely would have been more willing to accept a plea agreement on the very terms it had earlier suggested after the original indictment." (§ 2255 Mot. at 17.) The court is unpersuaded by Mr. Angelos's speculative claim and so dismisses Mr. Angelos's suggestion that the outcome of the plea negotiations would have been different but for his counsel's "investigatory failures."

[Mr. Lazalde] never comes around where he could have seen Mr. Angelos as he was getting out of the car, lift his pant leg to show him some suspicious weapon. There are some problems with this. The first problem we've got here is the pictures, they don't support [Mr. Lazalde's version of events].

(Tr. of Dec. 16, 2003 Trial Proceedings at 1283-85.)

The theory Mr. Angelos emphasizes in his § 2255 Motion was brought to the jury's attention by trial counsel. As just noted, the theory did not need to be presented through some sort of expert testimony. In short, Mr. Angelos has failed to show that his attorney's performance was deficient or that he was prejudiced in this regard.

Mr. Angelos also claims that he received ineffective assistance of counsel because trial counsel did not call witnesses to impeach Mr. Lazalde's credibility. (§ 2255 Mot. at 22.) The witnesses to which he refers were "two victims of an assault and kidnapping episode involving informant Lazalde that was known to Angelos." (Id.) According to the Motion, Mr. Angelos "pressed his trial counsel to present these witnesses in order to highlight for the jury that informant Lazalde was still involved in serious criminal activity while serving as an informant for the government." (Id.)

Refusal to call such witnesses to present the above-suggested testimony was not deficient representation. Mr. Angelos does not provide any analysis about how such testimony would be admissible. Indeed, it appears, based on his description of the purpose and nature of the witnesses' testimony, that their testimony would not be admissible to impeach Mr. Lazalde's credibility. See Fed. R. Evid. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence."). Accordingly, Mr.

32

Angelos's has not demonstrated ineffective assistance in this respect either.[24]

Mr. Angelos also argues that his defense counsel failed to "secure admission" of police reports at trial that would have provided exculpatory evidence. The Tenth Circuit addressed Mr. Angelos's appeal of the trial court's denial of the defense's motion to admit the reports. It held that the denial was proper and even if it were not, Mr. Angelos did not suffer any prejudice because admission of the reports would have been cumulative in light of Sergeant Mazuran's testimony about the problems they presented (testimony that was elicited by defense counsel). See Angelos, 433 F.3d at 749. The court finds no deficient performance concerning the police reports.

### c.    Failure to Move for Judgment of Acquittal or New Trial on Certain 924(c) Counts and Otherwise Preserve Critical Issues for Appeal

It is not disputed that Mr. Angelos's defense attorney did move for judgment of acquittal on one of the 924(c) counts and that the trial court denied the motion. But Mr. Angelos contends that his attorney provided ineffective assistance of counsel by failing to move for judgment of acquittal on the 924(c) counts related to the controlled buys that were purportedly based solely on the testimony of Mr. Lazalde.

Mr. Angelos must show that failure to make this argument before the trial court resulted in the reasonable probability that, but for counsel's failure, the outcome of the proceedings would have been different. Strickland, 466 U.S. at 689. While it is obvious that if Mr. Angelos had been acquitted of the two 924(c) counts related to the controlled buys, the outcome of the

---

[24]Moreover, information that raised questions about Mr. Lazalde's credibility came out during defense counsel's cross-examination of Sergeant Mazuran. (See, e.g., Tr. of Dec. 9, 2003 Trial Proceedings at 161-71.)

proceedings would have been different, he has not demonstrated that his trial counsel committed error in the first place.

Rule 29 of the Federal Rules of Criminal Procedure provides that a court, on defendant's motion, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When presented with a motion, the court must determine whether, viewing the evidence in the light most favorable to the government, that any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. E.g., United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000). "In conducting this review, [the court] 'may neither weigh conflicting evidence nor consider the credibility of witnesses.' It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." Id. at 1289-90 (internal citations omitted).

If, as Mr. Angelos asserts, two of the 924(c) counts were based exclusively on Mr. Lazalde's "dubious" and "inconsistent" testimony, then Mr. Lazalde's credibility was critical to the government's case. But the court would not have been able to consider Mr. Lazalde's credibility or weigh the conflicting evidence presented by defense counsel. Accordingly, bringing such a motion would have been futile. See United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir. 1985) ("Effective assistance 'does not demand that every possible motion be filed, but only those having a solid foundation.'"). Mr. Angelos's claim of ineffective assistance of counsel as to this issue is not valid.

### d.    Cumulative Errors

Because the court finds that trial counsel's performance in preparation for and during trial was not deficient, Mr. Angelos's cumulative error argument fails as a matter of fact and law.

### E.    Mr. Angelos's Claim of Ineffective Assistance of Counsel During Plea Negotiations Requires Factual Development Before Resolution By the Court May Occur

Whether Mr. Angelos was adequately informed about the consequences of rejecting the government's plea offer is not clear from the record.  "'The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case. This decision must ultimately be left to the client's wishes. . . . But counsel may and *must* give the client *the benefit of counsel's professional advice on this crucial decision*.'" Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996) (emphasis in original) (quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases § 201 at 339 (1988)) (noting that "[e]ffective assistance of counsel includes counsel's informed opinion [communicated to defendant] as to what pleas should be entered").

Mr. Angelos contends, albeit vaguely, that he was ready to accept a plea (it is not clear from his conclusory statements that he was ready to accept the plea the government offered) but did not do so because he was not adequately informed about the gravity of the risks he faced upon going to trial.  Because the crux of Mr. Angelos's claim is based on events occurring outside the courtroom (the record sheds no light on the interaction between Mr. Angelos and his counsel), the court has determined that an evidentiary hearing is necessary on the narrow issue of whether Mr. Mooney provided ineffective assistance of counsel to Mr. Angelos in light of the United States' plea offer and its representation that it would seek a superseding indictment if the

35

offer were rejected.  See Lasiter v. Thomas, 89 F.3d 699, 702 (10th Cir. 1996) ("[A] claim based

on events alleged to have occurred outside the courtroom, and upon which the record casts no

light, require an evidentiary hearing unless the allegations are so vague or conclusory as to permit

summary disposition.") (citing Blackledge v. Allison, 431 U.S. 63, 72-73 (1977)) (emphasis

added);  United States v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999) ("[Petitioner's] ineffective-

assistance claim, though at bottom presenting a potentially valid claim for relief, does not specify

the grounds for his allegation other than to say that his side of the story was not told at trial.  This

loose assertion, while perhaps not "conclusively" disproved by the record in the case, does not

tell the court enough about what happened to [Petitioner] and how his counsel was ineffective.

Further explanation is necessary before the court can begin to fully address the merits of the

claim.").

        Accordingly, **the court hereby sets an evidentiary hearing on the issues described**

**immediately above for Wednesday, February 11, 2009, at 3:00 p.m.  Mr. Angelos is directed**

**to file an affidavit relating to the issue set for hearing, and such affidavit shall be filed no**

**later than Tuesday, January 20, 2009.**  To the extent Mr. Angelos anticipates calling other

witnesses to support his claim, **he must file affidavits of those witnesses on January 20, 2009,**

as well.

        The affidavits, with any relevant documentary evidence attached, will replace direct

examination at the evidentiary hearing.  Accordingly, the evidentiary hearing will begin with

cross-examination of Mr. Angelos,[25] followed by re-direct, and, if applicable, cross-examination

---

        [25]At a later date, the court will issue the order(s) necessary to procure Mr. Angelos's
attendance at the evidentiary hearing.

and re-direct of his witnesses.  Documentary evidence also may be presented during the hearing. The United States shall be prepared to present evidence, whether testimonial or documentary, at the hearing in response to Mr. Angelos's evidence.


## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.     Mr. Angelos's request for discovery and an evidentiary hearing concerning his claims of vindictive prosecution and prosecutorial misconduct is DENIED.

2.     With the exception of Mr. Angelos's claim of ineffective assistance of counsel during plea negotiations, which the court takes under advisement, Mr. Angelos's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Docket No. 1) is DENIED. Accordingly, all of his claims, with the one exception noted immediately above, are DISMISSED.

3.     An **evidentiary hearing** on the **narrow issue** of whether Mr. Angelos's defense attorney provided ineffective assistance to Mr. Angelos in light of the United States' plea offer and its representation that it would seek a superseding indictment if the offer were rejected, **is hereby scheduled for Wednesday, February 11, 2009, at 3:00 p.m.**  In preparation for the evidentiary hearing, **Mr. Angelos shall file his affidavit and other related evidence, as described above, no later than Tuesday, January 20, 2009.**

4.     Mr. Angelos's Motion for Partial Summary Judgment to Vacate Portion of Sentence Pursuant to 28 U.S.C. § 2255 (Docket No. 9) is DENIED.

[continued on next page]

37

5.      The United States' Motion to Strike Angelos's Motion for Partial Summary

Judgment (Docket No. 22) is DENIED AS MOOT.

SO ORDERED this 8th day of December, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

38